UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAURA WATTS,

                              Plaintiff,

        -v-

WAL-MART STORES EAST, LP,

                              Defendant.

No. 16-CV-4411 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Courtney J. Campbell, Esq.
Sobo & Sobo, LLP
Middletown, NY
*Counsel for Plaintiff*

Patricia A. O'Connor, Esq.
Brody, O'Connor & O'Connor, Esqs.
Northport, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiff Laura Watts ("Plaintiff") brought this Action against Wal-Mart Stores East, LP

("Defendant") seeking to recover for personal injuries sustained from a fall at one of Defendant's

stores.  (*See* Aff. of Patricia A. O'Connor, Esq. ("O'Connor Aff.") Ex. A ("Compl.") (Dkt. No.

20).)  Before the Court is Defendant's Motion for Summary Judgment.  (*See* Dkt. No. 19.)  For

the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from the Defendant's Statement of Material Facts submitted pursuant to Local Civil Rule 56.1, (Def.'s Rule 56.1 Statement ("Def.'s 56.1") (Dkt. No. 21)), Plaintiff's Response to Defendant's 56.1 Statement (Pl.'s Response to Def.'s Rule 56.1 Statement ("Pl.'s 56.1 Resp.") (Dkt. No. 25)), and Defendant's Reply to Plaintiff's Response (Def.'s Reply Statement ("Def.'s 56.1 Reply") (Dkt. No. 27)), and are recounted "in the light most favorable to" Plaintiff, the non-movant.  *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (internal quotation marks omitted).  The facts as described below are not in dispute, except where indicated.

On May 3, 2015, Plaintiff was shopping at Middletown Wal-Mart Supercenter, Store #1959.  (Def.'s 56.1 ¶¶ 1 & n.1, 6; Compl. ¶ 33.)  Plaintiff alleges she suffered personal injuries from a fall in the rear portion of the store near the soda aisle as the result of a dangerous and/or defective condition.  (Def.'s 56.1 ¶ 2; Compl. ¶¶ 32, 33. 35.)

Video footage from the store beginning at 9:23:54 a.m. shows various Wal-Mart employees in the vicinity of the accident scene in the hour before Plaintiff's fall.  (Def.'s 56.1 ¶¶ 28, 30; Pl.'s 56.1 Resp. ¶¶ 30–31; O'Connor Aff. Ex H ("Video").)[1]  A Wal-Mart employee appears in the area of the fall at 10:12:56 a.m.  (Def.'s 56.1 ¶ 30; Video.)  Employees can also be observed in the general area at 9:27:26 a.m. and 9:28:07 a.m. exiting a door to the employee "backroom;" at 9:30:15 a.m. walking down the aisle with a stocking cart; at 9:33:13 a.m.

---

[1] Plaintiff notes that there are two orange cones visible on the right hand side of the screen from the beginning of the video that remain untouched during the duration of the video. (Pl.'s 56.1 Resp. ¶ 28.)

walking down the aisle with a ladder; at 9:38:08 a.m. and 9:39:35 a.m. exiting the employee backroom; at 9:41:48 a.m. walking down the aisle with a stocking cart; at 9:44:11 a.m., 9:46:51 a.m., 9:54:23 a.m., and 9:56:44 a.m. walking down the aisle; at 10:00:57 a.m. and 10:03:29 a.m. walking down the aisle with a stocking cart; and at 10:07:33 a.m. exiting the backroom.  (Pl.'s 56.1 Resp. ¶ 30; Video.)[2]  At 10:13:37 a.m., an individual is observed in the area of the fall. (Def.'s 56.1 ¶ 31.)  The Parties dispute whether this individual is a Wal-Mart employee. Defendant notes that the employee is not wearing a Wal-Mart shirt.  (Def.'s 56.1 ¶ 31.)  Plaintiff notes that the individual is seen entering the backroom at 10:13:43 a.m., and thus is an employee. (Pl.'s 56.1 Resp. ¶ 31.)[3]  At 10:22:05 a.m., a Wal-Mart employee is observed walking down the aisle, and a customer shopping cart is over the "area" of Plaintiff's fall during that time.  (Def.'s 56.1 ¶ 32; Pl.'s 56.1 Resp. ¶ 32.)[4]  At 10:22:40 a.m., the shopping cart is removed from the area. (Def.'s 56.1 Reply ¶ 33; Pl.'s 56.1 Resp. ¶ 33.)

---

[2] Plaintiff contends that the video shows employees entering "a private area/breakroom accessed only by employees through the door visible by the orange wall."  (Pl.'s 56.1 Resp. ¶ 30.)  Plaintiff notes that George Gallaher ("Gallaher"), the assistant manager in charge of the frozen, dairy, and grocery departments, refers to a "backroom" in his deposition testimony, and thus Plaintiff uses "'backroom' in reference to the area beyond the door, not visible by camera." (*Id.* (citing O'Connor Aff. Ex. E ("Gallaher Dep.") 16).)  "Although ultimately immaterial, [D]efendant takes issue with [P]laintiff's [statement regarding the backroom], because there isn't any support in the record for that assertion."  (Def.'s 56.1 Reply ¶ 1.)

[3] "Although ultimately immaterial, [D]efendant takes issue with [P]laintiff's . . . [assertion the individual is an employee], because, again, there isn't any evidence before th[e] Court that the individual in question is, in fact, an employee and that the individual enters a private area accessible only by[D]efendant's employees."  (Def.'s 56.1 Reply ¶ 2.)

[4] The Parties disagree over whether the shopping cart was over "the general area by the endcap closest to the backroom, and not the exact location of [Plaintiff's] fall," (Pl.'s 56.1 Resp. ¶ 32), or "clearly . . . positioned over the area where [P]laintiff then falls," (Def's 56.1 Reply ¶ 32.)

Plaintiff entered the store and got a shopping cart, with the intention of getting eggs, butter, and Pepsi. (Def.'s 56.1 ¶¶ 7–8; O'Connor Aff. Ex. D ("Pl.'s Dep.") 9.) Plaintiff testified that she walked to the back of the store, where the soda aisle was, left her shopping cart by the dairy aisle, and walked down the soda aisle. (Def.'s 56.1 ¶¶ 9–10; Pl.'s Dep. 11.) At 10:23:22 a.m., video footage shows Plaintiff walking through the area of her later accident. (Def.'s 56.1 ¶ 34; Video) Plaintiff did not observe any foreign substance on the floor as she walked from where she left her shopping cart to the entrance of the soda aisle. (Def.'s 56.1 ¶ 11; Pl.'s Dep. 15.) Once in the soda aisle, Plaintiff selected two 2-liter Pepsi bottles. (Def.'s 56.1 ¶ 12; Pl.'s Dep. 12.) Plaintiff carried one bottle of Pepsi in one hand, and in her other hand, she carried the second bottle, her wallet, and her keys. (Def.'s 56.1 ¶ 13; Pl.'s Dep. 12–13.) Plaintiff walked out of the soda aisle, and both of her feet allegedly slipped on liquid on the floor. (Def.'s 56.1 ¶¶ 14–15; Pl.'s Dep. 13, 15.) At 10:23:52 a.m., video footage shows Plaintiff's slip and fall. (Def.'s 56.1 ¶ 38; Video.)

Plaintiff did not notice the substance before she fell, but testified something "yellow or pink" caused her to fall, and "it was pinkish with some wet was on the floor and I didn't notice it." (Def.'s 56.1 ¶ 16; Pl.'s Dep. 15.) Plaintiff identified the substance as "something liquid," but did not "know what it was." (Def.'s 56.1 ¶ 16; Pl.'s Dep. 15.) When asked whether the substance was "thin like water, [or] thicker like detergent," Plaintiff responded that "[i]t looked more like detergent," and responded "[y]es" when asked whether it was "[k]ind of like a liquid soap." (Pl.'s Dep. 16.) When asked about the size of the substance, Plaintiff described it as "[a] little round little thing," more specifically "[a] circle," "similar to a base of a coffee mug" but the substance "was drops. That's why [Plaintiff] didn't notice it." (Def.'s 56.1 ¶ 17; Pl.'s 56.1

Resp. ¶ 17; Pl.'s Dep. 48–49.)  The substance got on Plaintiff's clothing, and Plaintiff described her clothes as "wet but not that wet," not "soaking wet."  (Pl.'s 56.1 Resp. ¶ 19; Pl.'s Dep. 49.) When Plaintiff touched it, she felt "the wet sensation.  It was kind of sticky."  (Pl.'s 56.1 Resp. ¶ 17; Pl.'s Dep. 50.)  Plaintiff does not know how the substance came to exist on the floor or how long it was on the floor for.  (Def.'s 56.1 ¶ 17; Pl.'s Dep. 48.)

After Plaintiff fell, she remained on the floor for five minutes, (Def.'s 56.1 ¶ 18; Pl.'s Dep. 17), and was helped up by another customer, (Def.'s 56.1 ¶ 19; Pl.'s Dep. 17).  The customer asked Plaintiff "what happened," and Plaintiff replied "I slipped and fell on the pink stuff on the floor."  (Pl.'s 56.1 Resp. ¶ 19; Pl.'s Dep. 20.)  Plaintiff "gestured" to where she fell. (Pl.'s 56.1 Resp. ¶ 19; Pl.'s Dep. 20–21.)  The customer "indicate[d] to [Plaintiff] affirmatively 'oh, yes, I see that liquid.'"  (Pl.'s 56.1 Resp. ¶ 19; Pl.'s Dep. 21.)  Video footage also shows Plaintiff point out the area of her fall to a passerby at 11:24:57 a.m.  (Video.)

Plaintiff left the store without advising any Wal-Mart employees of her fall.  (Def.'s 56.1 ¶ 20; Pl.'s Dep. 19, 21.)  Plaintiff returned to the store later that evening to report the accident, where she spoke with Gallaher.  (Def.'s 56.1 ¶¶ 21–22; Pl.'s Dep. 52.)

Gallaher testified that he had no independent recollection of speaking with Plaintiff on the day of the accident, but he recalled a claim for a fall on a "pink substance," because he "ha[d] never written anything up that said pink substance."  (Def.'s 56.1 ¶¶ 23–24; Pl.'s 56.1 Resp. ¶ 24; O'Connor Aff. Ex. E ("Gallaher Dep.") 21.)  Gallaher also testified as to store procedures for foreign substances on the floor.  (Pl.'s 56.1 Resp. ¶ 22; Gallaher Dep. 12, 14–16.) Specifically, Gallaher testified that "[w]e guard any kind of spill.  If we can't wipe it up ourselves—the associates have pocket pads that they use to wipe up spills. . . . If they can't, they

guard the spill until somebody comes over and helps them, whether maintenance or someone else, to clean it up." (Pl.'s 56.1 Resp. ¶ 22; Gallaher Dep. 12). Gallaher advised the employees he supervised to "always be diligent when you're walking around," (Pl.'s 56.1 Resp. ¶ 22; Gallaher Dep. 14), and to "keep their eyes open as they are walking the floor" (Pl.'s 56.1 Resp. ¶ 22; Gallaher Dep. 15). Employees were instructed never to "walk by something; if there is a piece of paper on the ground, pick it up, don't walk by it." (Pl.'s 56.1 Resp. ¶ 22; Gallaher Dep. 16).

### B. Procedural History

Plaintiff commenced the instant action in the Supreme Court of the State of New York, County of Orange, on April 28, 2016. (*See* Notice of Removal 1, 4 (Dkt. No. 1.) Defendant removed the case based on diversity of citizenship to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. (Notice of Removal 3). On February 8, 2017, following completion of discovery, Defendant requested leave from the Court to file the instant Summary Judgment Motion. (Dkt. No. 13.) On February 16, 2017, Plaintiffs filed a letter opposing the request. (Dkt. No. 14.) The Court held a pre-motion conference, (Dkt. No. 15), and issued a briefing schedule, (Dkt. No. 18).

Pursuant to the scheduling order, Defendant filed the instant Summary Judgment Motion, (Dkt. No. 19), along with a supporting Memorandum of Law, Rule 56.1 Statement, and supporting Affidavit on April 28, 2017. (Def.'s Mem. of Law in Supp. of Mot. For Summ. J. ("Def.'s Mem.") (Dkt. No. 22); O'Connor Aff.; Def.'s 56.1.) On June 5, 2017, Plaintiff filed a Memorandum of Law in Opposition, along with a Rule 56.1 Response Statement and a supporting Affidavit. (Pl.'s. Mem. of Law. Opp'n to Mot. for Summ. J. ("Def.'s Mem.") (Dkt. No. 26); Pl.'s 56.1 Resp.; Aff. Of Courtney Campbell, Esq., ("Campbell Aff.") (Dkt. No. 24).)

On June 12, 2017, Defendant filed a Reply Memorandum of Law and Reply to Plaintiff's Rule 56.1 Response Statement. (Def.'s Reply Mem. of Law. in Further Supp. of Mot. for Summ. J. ("Def.'s Reply Mem.") (Dkt. No. 28); Def.'s Reply 56.1.)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Further, "[t]o survive a

[summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider "only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal quotation marks omitted)).

B. Analysis

To establish a prima facie case of negligence under New York, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of N.Y.*, 489 N.E.2d 1294, 1294 (N.Y. 1985)).[5] In a premises liability "slip-and-fall" case, a plaintiff must first show "the existence of a dangerous or defective condition" that caused the accident. *Vasquez v. United States*, No. 14-CV-1510, 2016

---

[5] Because jurisdiction over this matter is based upon the Parties' diversity of citizenship, and because the alleged acts occurred in New York, the parties agree that New York law governs the substantive claims. (Def.'s Mem. 3 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)); Pl. Mem. 3 n.1.)

The Court notes that "New York courts require a defendant arguing lack of notice to present evidence that it neither created nor had notice of the dangerous condition." *Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-2775, 2013 WL 4017166, at *7 (S.D.N.Y. Aug. 7, 2013). "However, because the burden of proof that the parties bear in a summary judgment motion is procedural, the federal standard controls here." *Id.* "Thus, New York's burden-shifting standard requiring defendant to provide proof of absence of notice does not apply in a federal diversity case." *Id.*

WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016) (quoting *Winder v. Exec. Cleaning Servs., LLC*, 936 N.Y.S.2d 687, 687 (App. Div. 2012)).[6] Next, "the plaintiff must demonstrate that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it." *Decker v. Middletown Walmart Supercenter Store*, No. 15-CV-2886, 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017) (alterations and internal quotation marks omitted). Plaintiff does not contend that Defendant created the defective condition or had actual notice about it. (Pl.'s 56.1 Resp. ¶ 5 ("Plaintiff will be making only a constructive notice argument in the within opposition papers.") Accordingly, the Court only addresses the issue of constructive notice.

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the] defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat.'l History*, 492 N.E.2d 774, 775 (N.Y. 1986); *see also Decker*, 2017 WL 568761, at *4 (same).[7] Defendant argues Plaintiff has failed to raise a genuine dispute of material fact regarding constructive notice of the defect because there is no evidence that the pink substance on the floor was "visible and apparent," or that it existed for a "sufficient length of time." (Def.'s Mem. 6–11.) The Court will address each prong in turn.

---

[6] Defendant does not dispute that the substance on the floor represented a "dangerous or defective condition" that caused the accident. *Vasquez*, 2016 WL 315879, at *4 (explaining standard).

[7] Alternatively, "[a] plaintiff can establish constructive notice through evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed." *Mazerbo v. Murphy*, 860 N.Y.S.2d 289, 291 (App. Div. 2008) (citation and internal quotation marks omitted). Here, Plaintiff has neither argued nor presented evidence that a pink substance on the ground was a recurring danger in the store.

## 1. "Visible and Apparent"

Defendant argues that Plaintiff has failed to present any evidence that the substance on the floor was visible and apparent such that Defendant should have discovered it prior to Plaintiff's fall. (Def.'s Mem. 6.) Under New York Law, "[t]he mere existence of a foreign substance, without more, is insufficient to support a claim of negligence." *Segretti v. Shorenstein Co., East L.P.*, 682 N.Y.S.2d 176, 178 (App. Div. 1998); *see also Hammond–Warner v. United States*, 797 F. Supp. 207, 211 (E.D.N.Y. 1992) ("The mere existence of a liquid substance . . . where the accident allegedly took place does not establish constructive notice."). "In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the 'particular condition' at issue." *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997).

The Court finds Plaintiff has failed to present a triable issue of fact as to whether the substance was visible and apparent. Plaintiff presents no evidence that the "particular condition" was visible and apparent to Defendant. *Id.* First, it is undisputed that the particular condition was not "visible and apparent" to Plaintiff. Plaintiff walked by the area of the fall at 10:23:22 a.m., (Def.'s 56.1 ¶ 36), and testified she did not observe anything on the floor, (Def.'s 56.1 ¶ 11; Pl.'s Dep. 15). Plaintiff again entered the area at 10:23:52 a.m., (Def.'s 56.1 ¶ 38), and testified she "didn't notice" the liquid on the floor at that point either, (Def.'s 56.1 ¶ 16; Pl.'s Dep. 15). In describing the size of the substance, Plaintiff testified that it "was drops" and "that's why [she] didn't notice it." (Def.'s 56.1 ¶ 17; Pl.'s 56.1 Resp. ¶ 17; Pl.'s Dep. 49.) Courts in the Second Circuit have routinely granted summary judgment in similar slip and fall claims on the ground

11

that the defect was not visible and apparent when a plaintiff did not see it prior to the fall. *See, e.g., Decker,* 2017 WL 568761, at *7 (granting summary judgment where the plaintiff and her sister testified that they did not see the substance on the ground until after Plaintiff's fall, the surveillance video did not show the condition on the ground, and the surveillance video showed customers or employees walking through the area where plaintiff fell without incident or seeming to notice the condition on the ground); *Castellanos v. Target Dep't Stores, Inc.*, No. 12-CV-2775, 2013 WL 4017166, at *6 (S.D.N.Y. Aug. 7, 2013) (granting summary judgment where the plaintiff and her fiancé did not see the plastic that tripped her prior to the fall, where no other witness saw the condition, and where a surveillance video showed customers and employees walking through the area where plaintiff fell without incident or seeming to notice the condition on the ground); *Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335, 2009 WL 1955555, at *8 (E.D.N.Y. July 6, 2009) (granting summary judgment where "no one, including plaintiff, saw the puddle before the plaintiff fell"); *Robinson v. Wal-Mart Stores, Inc.*, 37 F. Supp. 2d 605, 607 (W.D.N.Y. 1999) (granting summary judgment where the plaintiff and the defendant did not see the substance before the fall), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *Cobb v. Indus Ltd. P'ship*, No. 98-CV-3549, 1999 WL 115441, at *3–4 (E.D.N.Y. Jan. 11, 1999) (granting summary judgment where the plaintiff did not notice the puddle before her fall and offered no evidence that someone saw the puddle before her fall); *Walker v. United States*, No. 95-CV-6567, 1998 WL 299928, at *2 (S.D.N.Y. June 8, 1998) (granting summary judgment because the defect was not visible and apparent where "plaintiff herself concede[d] that she did not see anything on the floor before she slipped"); *see also Fasolino v. Charming Stores, Inc.*, 569 N.E.2d 443, 443 (N.Y. 1991) (dismissing complaint where there was "no evidence that [the] defendant had notice of any

slippery condition prior to [the] plaintiff's fall; the testimony at most showed that [the] defendant's manager learned of a slippery condition from the fall"); *Smith v. May Dep't Store, Co.*, 705 N.Y.S.2d 153, 154 (App. Div. 2000) (affirming grant of summary judgment where both the plaintiff and employees noticed wet floor only after the accident, when a "few drops of water" were seen on the floor, and no one complained that the floor was wet prior to plaintiff's slipping); *Eaton v. Pyramid Co. of Ithaca*, 628 N.Y.S.2d 884, 884 (App. Div. 1995) (finding no evidence of constructive notice where the plaintiff noticed water on the floor only after fall in a "puddle" covering an area the size of the circle formed by her forefinger and thumb).  Second, as in *Castellanos*, the video does not suggest that any of the customers or employees that walked through the area in the hour of video surveillance before the fall noticed anything on the ground. *See* 2013 WL 4017166, at *6; *see also Decker,* 2017 WL 568761, at *7 (finding no constructive notice where "the video shows that four individuals walked through the same area mere seconds before [the p]laintiff fell without slipping, stopping or seeming to notice the alleged substance on the ground").  Nor does Plaintiff present evidence to demonstrate otherwise.

Plaintiff argues that the fact that Plaintiff noticed a defect only after a fall is not dispositive for summary judgment on the issue of whether the condition was visible and apparent, citing *Rivera v. Tops Markets, LLC*, 4 N.Y.S.3d 431, 432 (App. Div. 2015).  (Pl.'s Mem. 5–6.)  Not only did *Rivera* apply the more stringent New York procedural burden of proof, but the facts in *Rivera* are distinct from this case.  *Rivera*, 4 N.Y.S.3d at 432.  The plaintiff in *Rivera* testified that she did not notice the water on the ground that caused her to slip, similar to Plaintiff here.  *Id.*  However, the defendant in *Rivera* also submitted the deposition testimony of a store manager, who admitted that she observed water on the floor in proximity to the area

13

where the plaintiff fell, which raised a triable issue of fact regarding whether the puddles were visible. *Id.* Here, Plaintiff has submitted no evidence that any of Defendant's employees saw the pink substance before Plaintiff's fall.

Plaintiff's reliance on *Urrutia v. Target Corp.*, 681 F. App'x 102 (2d Cir. 2017), is similarly misplaced. The Second Circuit reversed the district court's grant of summary judgment to the defendant in *Urrutia* because the plaintiff "testified that when she entered the store about forty-five minutes before the accident, she saw a clear liquid on the floor near the area where she eventually fell." *Id.* at 104. The Second Circuit thus concluded that "[b]ased on [the plaintiff's] testimony that she saw clear liquid on the floor approximately forty-five minutes before she fell, and the evidence that she slipped in clear liquid in the same spot, a jury could reasonably conclude that the clear liquid was visible and apparent." *Id.* Here, Plaintiff did not testify that she saw the pink substance on the floor before she fell; in fact, she testified the exact opposite. (*See* Def.'s 56.1 ¶¶ 11, 16–17; Pl.'s 56.1 Resp. ¶¶ 11, 16–17; Pl.'s Dep 15, 49.)[8]

Plaintiff points to the fact that Defendant's employees walked down the aisle of the accident on at least fifteen occasions prior to Plaintiff's fall as evidence Defendant was on constructive notice of the condition. (Pl.'s Mem. 1.) This, however, begs the question of whether the substance was "visible and apparent" to those fifteen employees. *Dranoff v. Sam's E., Inc.*, No. 16-CV-6482, 2017 WL 1437207, at *6 (S.D.N.Y. Apr. 20, 2017) ("[A]n argument that [the d]efendant was on constructive notice based on [the p]laintiff's assertion that [the

---

[8] The Court also notes that *Urrutia*, 681 F. App'x at 104, is a summary order and is not precedential. *See* 2d Circuit L.R. 32.1.1(a) & (b)(1) (permitting citation to summary orders issued after January 1, 2017 but noting they are "not precedential").

defendant's] employee had walked around the relevant area four times before the fall would also fail because there is no evidence that the water was visible and apparent.").[9]

Plaintiff argues that because the evidence indicates that the substance was "pink" and in sufficient volume to "wet" the pants of Plaintiff, the defect should have been "readily visible" on Defendant's "bright white tiled floor."  (Pl.'s Mem. 1, 5.)  Plaintiff also points to evidence that two other passersby saw the pink substance.  (Pl.'s Mem. 5 (citing Pl.'s Dep. at 20–21; Video 10:24:57 a.m.); Pl.'s 56.1 Resp. ¶¶ 19, 39.)[10]  Nonetheless, summary judgment is appropriate because, by presenting this evidence, Plaintiff offers nothing but mere speculation that Defendant had notice of the condition because of the substance's color or volume and the fact that two customers were able to see substance on the floor *after* Plaintiff pointed it out to them.  *See Castellanos*, 2013 WL 4017166, at *6 (granting summary judgment because the argument that the defendant should have been alerted was "founded solely on speculation" and the plaintiff failed "to present any evidence other than speculation" that the defect was visible and apparent); *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 404 (E.D.N.Y. 2010) (finding summary judgment appropriate where the plaintiff's theory of notice was based "on speculation and conjecture far removed from fact") (collecting cases); *Robinson*, 37 F. Supp. 2d at 608

---

[9] Plaintiff also argues that Defendant's employees should have been "diligent," as they were never to "walk by something" and that "if there is [anything] on the ground, pick it up, don't walk by it."  (Pl.'s Mem. 2 (citing Gallaher Dep. 15–16).)  However, the Court finds Defendant's policy regarding what should happen after an employee identifies something on the ground is not material to whether any of the employees ever saw the substance.

[10] The Court notes that the evidence also indicates that these passersby saw the pink substance *after* Plaintiff gestured towards the substance to the customer that helped her up, (Pl.'s Dep. 21), and pointed at the substance to a second customer walking by, (Pl.'s 56.1 Resp. ¶ 39; Video 10:24:57 a.m.).

(noting that "mere[] speculat[ion] . . . is not enough to give rise to a genuine issue of material fact about whether [the] defendant had actual or constructive notice of the dangerous condition" (internal quotation marks omitted); *see also Gordon*, 492 N.E.2d at 774 (noting that, without evidence to the contrary, the dangerous condition "could have been . . . there only minutes or seconds before the accident and any other conclusion would be pure speculation"); *Mueller v. Hannaford Bros. Co.*, 713 N.Y.S.2d 789, 789 (App. Div. 2000) ("[M]ere conclusions based upon surmise, conjecture, speculation or assertions are without probative value." (internal quotation marks omitted)).[11]

Accordingly, the Court grants Defendant's Motion for Summary Judgment because Plaintiff has failed to present any evidence other than speculation regarding whether the defect was visible and apparent. *See, e.g.*, *Schwarz v. FedEx Kinko's Office*, No. 08-CV-6486, 2009 WL 3459217, at *13 (S.D.N.Y. Oct. 27, 2009) (granting summary judgment for the defendant

---

[11] Plaintiff argues that circumstantial evidence—including Plaintiff's testimony, Gallaher's testimony, and video evidence—could lead to the reasonable inference that Defendant had constructive notice. (Pl.'s Mem. 1, 3–4.) "While . . . notice cannot be speculative, it can be based upon circumstantial evidence." *Harrison v. New York City Transit Auth.*, 978 N.Y.S.2d 194, 196 (App. Div. 2014) (citing *Solazzo v New York City Tr. Auth.*, 843 M/E/2d 748, 759 (N.Y. 2005)). As explained, Plaintiff's evidence of a visible and apparent defect is all based on speculation. And, the cases Plaintiff cites where courts have found that circumstantial evidence precluded summary judgment dealt with proving negligence where the plaintiff alleged the defendant "created the defective condition," and thus circumstantial evidence rendered it probable that the defendant was responsible for the condition. *See, e.g.*, *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 422 (2d Cir. 2004) (finding that "[the plaintiff] presented sufficient circumstantial evidence to render the probability that someone other than [the defendant] was responsible for the grease [spilled on the sidewalk] sufficiently 'remote' or 'technical' in comparison to the explanation she offered," namely that employees took garbage bags of food waste across the sidewalk twice a day and that sometimes those bags leaked and that the dumpster was dragged across the sidewalk).

when the plaintiffs failed to present any evidence that condition was visible and apparent);

*Richards v. Pathmark Stores, Inc.*, No. 07-CV-1790, 2008 WL 3165582, at *7 (S.D.N.Y. Aug. 6,

2008) (same); *Lamela v. City of N.Y.*, 560 F. Supp. 2d 214, 223–24 (E.D.N.Y. 2008) (same),

*aff'd* 332 F. App'x 682 (2d Cir. 2009); *Pinnock v. Kmart Corp.*, No. 04-CV-3160, 2005 WL

3555433, at *3 (S.D.N.Y. Dec. 29, 2005) ("[The p]laintiff has not shown that the hanger was

visible and apparent. . . ."); *Fay v. Bass Hotels & Resorts, Inc.*, No. 00-CV-9107, 2003 WL

21738967, at *4 (S.D.N.Y. July 28, 2003) ("[The p]laintiffs fail to present any facts showing [the

dangerous condition]—which they allege was on the floor and caused [one of the plaintiffs] to

slip—was 'visible and apparent.'"); *see also Niagara Mohawk Power Corp. v. Jones Chem., Inc.*,

315 F.3d 171, 175 (2d Cir. 2003) ("Conclusory allegations, conjecture, and speculation are

insufficient to create a genuine issue of fact." (alteration and internal quotation marks omitted)).

### 2. "Length of Time"

Defendant also argues that Plaintiff has failed to present any evidence that the substance

on the floor was there for long enough that Defendant should have discovered it prior to

Plaintiff's fall. (Def.'s Mem. 7–8.) Plaintiff testified that she did not know what caused the spill

or when it occurred. (Def.'s 56.1 ¶ 17; Pl.'s 56.1 Resp. ¶ 17; Pl.'s Dep. 48–49.) "To get to a

jury, [Plaintiff] is required to provide some basis for an inference that the spill was there long

enough to blame [Defendant] for the accident." *Casierra v. Target Corp.*, No. 09-CV-1301,

2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010). Here, as in *Casierra*, the Court finds:

> there is simply no evidence . . . as to how long that period was. For all we know, the
> [pink substance] may have been on the floor for a long time, or it may have spilled
> moments before [Plaintiff] slipped on it. In short, "it would be speculative to infer that
> [the substance] had been on the floor for an appreciable length of time."

*Id.* (quoting *Kraemer v. K–Mart Corp.,* 641 N.Y.S.2d 130, 130 (App. Div. 1996)); *see also Dranoff*, 2017 WL 1437207, at *5 ("Because [the p]laintiff proffers no evidence showing that the water on the floor was visible or apparent for a sufficient time before the fall, the Court cannot infer that [the d]efendant had constructive notice of it."); *Decker*, 2017 WL 568761, at *7 ("Assuming arguendo that the substance was 'visible and apparent,' there is no evidence as to when the substance was spilled on the floor, and [the] plaintiff's failure to offer such evidence is fatal to her claim of constructive notice." (quoting *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 330 (E.D.N.Y. 1998)) (italics and alterations omitted)); *Stephanides v. BJ's Wholesale Club, Inc.*, No. 12-CV-83, 2013 WL 1694901, at *5 (E.D.N.Y. Apr. 18, 2013) (collecting cases) ("[I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant.").

The only evidence Plaintiff offers to support her argument that the length of time the substance was on the floor was sufficient to put Defendant on notice of the condition is the fact that Plaintiff described the substance as "kind of sticky." (Pl.'s 56.1 Resp. ¶ 17; Pl.'s Dep. 50.)[12]

---

[12] Plaintiff argues that the video of Defendant's employees' presence in the area of the accident site prior to Plaintiff's slip and fall is circumstantial evidence that the condition existed for a sufficient length of time. However, the fact that there is video footage from before and after Plaintiff's fall is inconclusive on the question of the length of time the substance was on the floor and not circumstantial evidence that supports an inference in support of Plaintiff's position. The video does not show that the pink substance was on the floor when the employees walked by or show a potential source of the substance—for example, Defendant's employees' stocking pink liquid before the accident. *See, e.g.*, *Feder v. Target Stores*, 15 F. Supp. 3d 253, 257 (E.D.N.Y. 2014) (finding evidence that employee was cutting plastic ties near the accident site at the time the plaintiff tripped on a similar colored plastic tie was circumstantial evidence that defendant created the dangerous condition); *Olsen v. K Mart Corp.*, No. 04-CV-3648, 2005 WL 2989546, at *11–12 (E.D.N.Y. Nov. 8, 2005) (finding evidence that employee was stocking Spaghetti-O's

Plaintiff testified that she did not know what the substance was, and described it as a thicker substance "more like detergent" and "kind of like a liquid soap." (Pl.'s Dep. 16.) This allegation lacks any "telltale signs supporting an inference of a long standing condition." *Figueroa v. Pathmark Stores, Inc.*, No. 02-CV-4992, 2004 WL 74261, at *4 (S.D.N.Y. Jan. 15, 2004) (internal quotation marks omitted). In *Figueroa*, the court found that based on evidence that there was a "trail of pink liquid leading from the front of the store though the checkout area with shopping cart tracks and footprints through it, leading in different directions," the "observation that the [liquid] had become sticky and begun to change color and consistency in some places," and the "the alleged location of the pink liquid, in the high traffic and presumably constantly staffed checkout area," a jury could infer that the pink liquid was present for an appreciable period of time. *Id.* Here, there is no evidence that the pink substance has spread through a significant portion of the store, with shopping cart tracks and footprints through it—rather, Plaintiff testified that the spill was isolated drops in an area the size of a coffee mug base, (Def.'s 56.1 ¶ 17; Pl.'s 56.1 Resp. ¶ 17; Pl.'s Dep. 48–49), with no suggestion the liquid had been tracked through the store by shopping carts and people repeatedly passing over the spill. Plaintiff also does not present any evidence that the liquid had been there long enough that portions changed color and consistency.

The facts Plaintiff presents are more analogous to *Robinson*, 37 F. Supp. 2d 605, where the court granted summary judgment despite a similar argument that the substance that the

---

earlier in the day near the accident site where the plaintiff tripped on a box of Spaghetti-O's was circumstantial evidence that the employee left the box behind and created the dangerous condition).

plaintiff fell on was sticky, because that alone did not create an issue of fact. *Id.* at 607–08. The court found that "[t]he inference that [the] plaintiffs seek to draw here requires the assumption that the liquid was soda pop or some similar liquid that tends to become sticky after it has been on a floor or other surface for some time. There is no evidence in the record, however, what the liquid was." *Id.* To guess what the liquid was would be "pure speculation" because "[i]t may well have been something that was sticky at the moment it hit the floor . . . given the myriad of products sold in a store like Wal–Mart." *Id.* at 608. And, "at most its stickiness might tend to show only that [a substance] had not been spilled immediately prior to the accident. To infer that it had been there long enough to put defendant on notice of its presence would be purely speculative." *Id.* Here, too, it would be "pure speculation" to suggest the substance was not something that was sticky the moment it hit the floor—especially when Plaintiff testified that the liquid may have been soap. (Pl.'s Dep. 16.) *See Nolasco v. Target Corp.*, No. 10-CV-3351, 2012 U.S. Dist. LEXIS 191275, at *6 (E.D.N.Y. Nov. 13, 2012) ("Plaintiff and her daughter testified that the spilled detergent appeared to be 'thick' . . . and 'cloudy,' . . . possibly implying that the liquid acquired these characteristics only after sufficient time had elapsed for it to have somewhat dried. However, the detergent may well have been inherently thick and cloudy."). And, the fact that Plaintiff testified that the substance appeared to be wet "undermines any inference that the liquid had been left to dry for an appreciable period of time." *Nolasco*, 2012 U.S. Dist. LEXIS 191275, at *7. Accordingly, Plaintiff's evidence that the substance was "sticky" does not establish that the substance was on the floor for a long enough period of time to put Defendant on notice of its presence.

Thus, the Court finds summary judgement appropriate because the evidence of "stickiness" is insufficient to create a genuine issue of material fact regarding how long the substance had been on the floor. *Decker*, 2017 WL 568761, at *8–9 (granting summary judgment where the plaintiff and her sister described the substance as "wet," "slimy" or "gooey"); *see also Casiano v. Target Stores,* No. 06–CV–6286, 2009 WL 3246836, at *4–5 (E.D.N.Y. Sept. 24, 2009) (granting summary judgment against a plaintiff who slipped on laundry detergent but produced no evidence as to how long the detergent was on the floor); *Baxter v. Jackson Terrace Assocs., LLC*, 842 N.Y.S.2d 78, 79 (App. Div. 2007) (finding that the plaintiff failed to raise a triable issue of fact and "offered no evidence concerning how long the alleged hazard existed prior to the accident," despite the plaintiff's testimony that the substance was "sticky and gooey"); *Dixon v. Lichtman*, 742 N.Y.S.2d 906, 907 (App. Div. 2002) ("We reject the plaintiff's contention that her description of the spill as 'dry, gluey' and as changing color, raised an issue of fact regarding constructive notice.")).[13] Accordingly, the Court finds Defendant's Motion for Summary Judgment should be granted because Plaintiff has failed to

---

[13] Plaintiff also relies on *Torres v. United States*, No. 09-CV-5092, 2010 WL 5422547 (S.D.N.Y. Dec. 23, 2010), to argue that summary judgment should be denied because Defendant did not provide evidence of the last time the area was cleaned. (Pl.'s Mem. 8–9.) As another district court aptly explained when distinguishing a slip-and-fall case similar to Plaintiff's from *Torres*, "in *Torres*, there was evidence that [the d]efendant had not conducted its regular, required inspections of the area where the accident occurred. By contrast, [the p]laintiff has not pointed to any evidence that [the d]efendant failed to inspect or clean the premises, but instead incorrectly places the burden on [the d]efendant to produce affirmative evidence of its inspection and cleaning records." *Decker*, 2017 WL 568761, at *9 (citation omitted). Here, too, Plaintiff has not pointed to any evidence that Defendant had not conducted regular, required inspections of the area and impermissibly places the burden of presenting evidence that the accident site was inspected or cleaned on Defendant. (Pl.'s Mem. 9 (arguing that "there is not a modicum of evidence that the accident site was inspected or cleaned for at least an hour prior to the accident").)

present any evidence other than speculation regarding the length of time that the substance was on the ground. "[A] verdict in [the] plaintiff's favor, based solely on this record, would constitute speculation, rather than a finding of fact." *Lacey v. Target Corp.*, No. 13-CV-4098, 2015 WL 2254968, at \*5 (E.D.N.Y. May 13, 2015).

## III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 19), enter judgment for Defendant, and close this case.

SO ORDERED.

DATED:    March 29, 2018
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE